In The

Court of Appeals

For The

First District of Texas

____________

NO. 01-01-00842-CR

____________


LESTER MYLES, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from The 263rd District Court

Harris County, Texas

Trial Court Cause No. 858,484






O P I N I O N Appellant was charged by indictment with aggravated robbery. Appellant pled not
guilty to the charge, and a jury found appellant guilty as charged with an affirmative finding
of a deadly weapon. The indictment included two enhancement paragraphs, and appellant
pled true to both enhancements. The jury assessed punishment at 47 years in prison.


 BACKGROUND

 On October 9, 2000, Nolan Sharp and his nephew, Ronald Gulley, were returning
from the house of his friend Dinkie. As Sharp and Gulley were leaving Dinkie's house, they
were approached by a man they knew as Tallhead. Tallhead asked Sharp for $50, to which
Sharp responded, "I ain't got it right now." Sharp saw appellant waiting in a gray Lincoln
Continental when Tallhead approached him for the money. After Sharp told Tallhead he did
not have the money, Tallhead walked back to the gray Continental and Sharp and Gulley left. 
 Sharp and Gulley noticed that they were being followed by the gray Continental. 
When Sharp arrived at his house, he went inside to get his cordless phone so that he could
call his girlfriend. He came back down to his truck, where Gulley was still sitting in the
passenger's seat, and Sharp called his girlfriend. He then heard a shot fired close to him. He
looked up and there was a man wearing a mask standing outside of his truck. Sharp
recognized the man as appellant by his voice and facial features that were visible even with
the mask. Appellant told him, "Step out the truck and give it up." Sharp interpreted that to
mean give up your money. When Sharp got out of the truck, appellant, told him to get on the
ground. Sharp did not get down on the ground because he was scared appellant would shoot
him in the back of the head. Appellant then shot Sharp in his right hand.  Then, Sharp
tackled appellant. The two struggled for about three to four minutes, and Sharp took off
running. Sharp jumped over a fence, and appellant began shooting again. Appellant pursued
Sharp, and to scare off appellant, Sharp said, "Whew, there come the police." Appellant got
scared and ran away.

 The police arrived at the scene of the shooting and called an ambulance. Sharp told
the police he did not know who had shot him. Sharp did know who the shooter was, but at
the time had decided he was going to take "the law into his own hands." Sharp was at the
hospital for two or three days, and while he was there, he decided to tell the police who had
shot him. After being released from the hospital, Sharp made a written statement to the
police. In his statement, Sharp told the police that appellant was the shooter, and the police
also interviewed Gulley. Gulley corroborated Sharp's statement, and the police then put
together a photospread. The photospread included a photo of appellant, Tallhead, and four
other individuals. Sharp identified appellant from the photospread. The police obtained a
warrant, went to appellant's residence, and arrested appellant. 

 DISCUSSION


 In his first and second points of error, appellant argues that the evidence is legally and
factually insufficient to support his conviction for aggravated robbery. Specifically,
appellant argues that the evidence was legally and factually insufficient to support his
conviction because (1) there is no evidence that appellant intended to commit theft or deprive
Sharp of any property and (2) the witnesses were simply not credible. 

 In reviewing the evidence on legal sufficiency grounds, we view the evidence in the
light most favorable to the prosecution to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In reviewing the evidence on factual
sufficiency grounds, all of the evidence as a whole must be reviewed and not only in the light
most favorable to the prosecution. Clewis v.State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). After reviewing the evidence, we will not deem the evidence to be factually
insufficient unless (1) it is so weak as to be clearly wrong and manifestly unjust or (2) the
adverse finding is against the great weight and preponderance of the available evidence. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). However, in a factual sufficiency
review, the appellate court should not substitute its own judgment for that of the fact finder. 
Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). Under both legal and factual
sufficiency, the jury is the exclusive judge of the facts, the credibility of the witnesses, and
the weight to be given to the witnesses' testimony. Penegraph v. State, 623 S.W.2d 341, 343
(Tex Crim. App. 1981).

Evidence Favorable to the Verdict

 At trial, Nolan Sharp testified that appellant threatened him at gunpoint, "Step out of
the truck and give it up." Sharp testified that he understood this to mean appellant wanted
his money or his truck. In addition, Sharp testified that five minutes prior to the threat,
appellant's friend, Tallhead, had asked Sharp if he could borrow $50. Sharp also stated that
he saw appellant with Tallhead when Tallhead asked him for the $50. 

 Sharp testified that appellant called him after he returned from the hospital. Sharp
said that appellant identified himself and asked, "What is this here that I heard about I robbed
you?" Sharp said he told appellant that he knew it was him who had tried to rob him. 
Appellant asked if Sharp had filed charges against him, and he asked Sharp to drop the
charges. Finally, Sharp testified that on the phone, appellant admitted to committing the
robbery and apologized.

 Gulley testified at trial that he was with Sharp on the night of the robbery. Gulley
testified that Tallhead asked Sharp for money and Tallhead and appellant followed them
home. Gulley testified that he recognized appellant and Tallhead and appellant shot at
Sharp. Gulley testified that he could identify appellant because of the "beanie" and "thermo"
he was wearing. 

 Officer Motard testified that Sharp came to the homicide division to change his
previous statement and he told the officers it was appellant who shot and tried to rob him. 
He testified that Sharp identified appellant from a photospread that included a photograph
of Tallhead, and Gulley corroborated Sharp's statement. 

Evidence unfavorable to the Verdict 

 After the shooting, Sharp originally told the police that he did not know who had shot
him. Gulley also did not identify appellant as the shooter when the police came to Sharp's
home. Sharp and Gulley both confirmed that Sharp had taken drugs 2 or 3 days prior to the
robbery. 

 Officer Gillham testified that, on the night of the robbery, Sharp told him he did not
know who had shot him. Officer Gillham also asked Sharp if he had recognized the
shooter's voice, and Sharp answered, "No." Officer Gillham also testified that he felt Sharp
was "holding back" and not telling him the truth about whether he knew who the shooter
was. 

 Leonard Banks testified at trial that he witnessed the shooting from his hamburger
stand. He stated that he could not positively tell who the shooter was because the shooter
was wearing a mask. He further explained that he remembered the shooter being thin, and
he thought appellant was "solid." Banks stated that appellant was "probably not" the shooter. 
He also explained that he never saw the shooter's face, but only his body. 

Analysis

 Appellant argues that there is no evidence that appellant intended to commit theft or
deprive Sharp of any property. The jury was presented with testimony from Sharp, Gulley,
and the police officers. Sharp and Gulley both testified that Tallhead had approached Sharp
and asked to borrow $50 immediately before the robbery. They each testified that appellant
was with Tallhead. Sharp testified that when appellant stated, "Step out the truck and give
it up," he understood that to mean appellant wanted the money or his truck. 

 Appellant also argues that the evidence is legally and factually insufficient because
the witnesses are "simply not credible." He argues that Sharp is "an admitted liar, perjurer,
career criminal and thief." However, under both legal and factual sufficiency, the jury is the
exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the
witnesses' testimony. Penegraph , 623 S.W.2d at 343. The jury was presented with Sharp's
background and was given the opportunity to weigh his and all the other witnesses's
testimony. 

 After examining the evidence in the light most favorable to the verdict, we find that
the evidence was legally sufficient to support appellant's conviction for aggravated robbery. 
Moreover, we find that (1) the evidence was not so weak as to be clearly wrong and
manifestly unjust and (2) the adverse finding was not against the great weight or
preponderance of the available evidence. Accordingly, we overrule appellant's first and
second points of error. 

 We affirm. 


 Sam Nuchia

 Justice


Panel consists of Chief Justices Schneider and Justices Hedges and Nuchia.

Do not publish. Tex. R. App. P. 47.